In re Sherril Hamilton
PROPST, Debtor.

John G. LEAKE, Trustee, Plaintiff,

v.

VALLEY FEED COMPANY, et
al., Defendants.

Bankruptcy No. 5–86–00401.
Adv. No. 5–87–0024.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 20, 1988.

Douglas T. Stark, Harrisonburg, Va., for plaintiff.

W. Chapman Goodwin, Staunton, Va., for defendants.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

This matter comes on upon the trustee's motion for partial summary judgment filed on July 28, 1987, the memorandums of law of the respective parties and the argument of counsel. The issue raised by the trustee in the motion for partial summary judgment is whether or not the defendant, Valley Feed Company (hereinafter Valley Feed), properly perfected a security interest in the debtor's entitlements under the dairy termination program administered by the United States Department of Agriculture. The trustee asserts that there was no proper perfection and that the lien asserted by Valley Feed is voidable under 11 U.S.C. § 547(b).

### Facts

The parties have entered into a stipulation of facts for purposes of the trustee's motion for partial summary judgment.

The stipulation reveals that early in the Spring of 1986, the debtor decided to end his dairy operation and to participate in the dairy termination program sponsored by the federal government. At the time the debtor made his determination to terminate his dairy operation, he was indebted to Valley Feed in the sum of $11,400.16. The debtor needed feed in order to feed his herd during the course of the dairy termination program and he anticipated establishing a feeder cattle operation which would require purchase of feed in the future. He approached Valley Feed concerning the extension of necessary credit to obtain feed. Valley Feed expressed its willingness to sell the debtor feed but conditioned its willingness to do business with the debtor on an assignment to it of the debtors interest in the dairy termination program to the extent of $34,305.52. The parties agreed that the proceeds from the dairy termination program were to be utilized first toward the payment of the antecedent debt owed by the debtor to Valley Feed in the amount of $11,400.16 and that Valley Feed was to retain the balance of the proceeds it received pursuant to the assignment under the dairy termination program to secure future purchases by the debtor of feed.

On April 10, 1986, the debtor and Valley Feed signed a form provided by the federal government (ASCS form 36–1) to secure the payment of the debtor's antecedent debt and to secure any future advances made by Valley Feed to the debtor for purchases of feed. Pursuant to the Code of Federal Regulations applicable to this transaction, 7 C.F.R. Part 1430 and 7 C.F.R. Part 709, the ASCS form 36–1 was filed with the Augusta County ASCS office. No other legal documents were signed by the parties and no financing statement was recorded in Augusta County evidencing perfection of a security interest in favor of Valley Feed.

The debtor demonstrated his compliance with the dairy termination program and, pursuant to the ASCS form 36–1, on May 12, 1986, a check was drawn by the Commodity Credit Corporation and issued through the Augusta County ASCS office payable to Valley Feed. Valley Feed received the check on May 14, 1986, and applied the sum of $11,400.16 toward the debtor's antecedent debt. The balance of the funds were retained by Valley Feed for future purchases pursuant to agreement between the parties.

Subsequent to May 14, 1986, there was no need for additional feed and the debtor never instituted his feeder cattle operation. On October 3, 1986, the debtor filed his petition for relief under Chapter 7 of the United States Bankruptcy Code. Valley Feed turned over to the trustee the funds from the dairy termination program which had been retained for future purchases of feed. The fund which the trustee seeks to recover is the $11,400.16 applied to the antecedent debt.

### Law

One of the grounds asserted by the trustee for recovery of the fund is 11 U.S.C. § 547(b). The trustee seeks to have this court find that Valley Feed never properly perfected a security interest in the contract which the debtor had with the federal government pursuant to the dairy termination program. Further, the trustee takes the position that 11 U.S.C. § 547(e)(2) operates in the case at bar to make the transfer that the trustee seeks to avoid occur, by operation of law, immediately prior to the filing date of the debtor's bankruptcy petition. Should the trustee prevail, the transfer which the trustee seeks to avoid would be within the 90–day period set forth in 11 U.S.C. § 547(b)(4)(A) and would position him to avoid the security interest asserted by Valley Feed. The trustee argues that there are two transfers that are captured by § 547(e)(2)(C). The first transfer is the execution of the ASCS form 36–1 on April 10, 1986. The second transfer is the delivery of the check to Valley Feed on May 14, 1986, as proceeds from the contract between debtor and the Commodity Credit Corporation, the contracting authority under the dairy termination program.

Valley Feed offers a number of theories in opposition to the trustee's motion for partial summary judgment. First, Valley

Feed argues that it has a properly perfected security interest in the debtor's participation in the dairy termination program as a result of the signing and filing of the ASCS form 36–1. Valley Feed argues that the provisions set forth in the Code of Federal Regulations governing the assignment of contract rights in the dairy termination program were intended by Congress to supercede the provisions of the Uniform Commercial Code insofar as they pertain to proper perfection of a security interest. *See,* Virginia Code Annotated § 8.9–302(3)(a).

In the alternative, Valley Feed argues that final payment was made to it on May 12, 1986, that this final payment satisfied the debtor's obligation to Valley Feed in full and that its security interest in the dairy termination program contract rights of the debtor ceased at the time of payment in full. Valley Feed argues further that since the payment was received outside the 90–day preferential transfer period, the trustee cannot prevail under 11 U.S.C. § 547(b). Valley Feed argues that the debtor could have demanded, on or about May 12, 1986, that Valley Feed release the assignment which had been executed in its favor. However, this argument ignores the facts as stipulated by the parties. These stipulated facts demonstrate that the parties agreed that Valley Feed would retain the balance of the funds paid to it by the County ASCS office pursuant to the dairy termination program for application against future purchases of feed by the debtor. In fact, no such future advances were made; nevertheless, Valley Feed retained the fund in its custody and control until after the filing of the petition for relief when it turned the fund over to the trustee.

■ The first issue to be resolved is whether or not Valley Feed had a security interest in the debtor's participation in the dairy termination program as a result of the signing and filing of form ASCS form 36–1 with the Augusta County ASCS office. The United States Dairy Termination Program is governed by the provisions of the United States Code of Federal Regula-

tions, 7 C.F.R. Part 1430 and 7 C.F.R. Part 709. The Code of Federal Regulations permits an individual to make assignments of his rights under his contract with the federal government in the dairy termination program in order to secure or pay pre-existing indebtedness. These assignments must be made in accordance with 7 C.F.R. Part 709. *See,* 7 C.F.R. § 1430.464. The purpose of 7 C.F.R. Part 709 is to "state the conditions under which a producer may assign his payment...." 7 C.F.R. § 709.1.

The purpose for which a payment may be assigned under Part 709 of the Code of Federal Regulations is as follows:

> A payment which may be made to a producer under any program to which this part is applicable may be assigned only as security for cash or advances to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice, for the current crop year.

7 C.F.R. § 709.3.

Section 1430.464 modifies 7 C.F.R. Part 709 to provide that assignments may also be made to secure or pay pre-existing indebtedness.

Valley Feed and the debtor conducted all of their transactions pursuant to the provisions of the Code of Federal Regulations cited above. This court finds that the parties intended to create a security interest in favor of Valley Feed when form ASCS form 36–1 was prepared, signed, and filed with the Augusta County ASCS office. The form 36–1 is shown as Exhibit B in the trustee's complaint. It is signed by both the debtor and Valley Feed. It contains a recitation of the amount owed and recites that it is assigned in consideration of cash or other advances. Thus, the form satisfies the provisions found in Virginia Code Annotated § 8.9–105(1), which define a security agreement as an agreement which creates or provides for a security interest. Virginia Code Annotated § 8.9–201 recites that any security agreement is effective according to its terms between the parties and as to third parties.

■ The second issue to be resolved is whether the security interest created is

properly perfected so as to have priority over all third party claimants including the trustee in bankruptcy. In order to establish its priority, Valley Feed argues that the Code of Federal Regulations preempts the Uniform Commercial Code as to the method of perfection. Valley Feed argues that the Code of Federal Regulations applicable here establishes a nationwide system of registration akin to that utilized for aircraft under the Federal Aviation Act.

The court has examined the authorities cited by Valley Feed and by the trustee in bankruptcy. There is no authority offered to evidence a congressional intent to utilize the Code of Federal Regulations, 7 C.F.R. Part 709, to establish a centralized system for the national registration of security interests with respect to the dairy termination program. Further, it is clear from the regulations that there is no centralized system for recording security interests such as is found with respect to aircraft. For purposes of recording the form ASCS 36–1 is filed with the local ASCS office. Virginia Code Annotated § 8.9–302(3)(a) provides:

> (3) The filing of a financing statement otherwise required by this title is not necessary or effective to perfect a security interest in property subject to
>
> (a) a statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title or which specifies a place of filing different from that specified in this title for filing of the security interest; ...

Since the Code of Federal Regulations is neither a statute nor a treaty of the United States, the Uniform Commercial Code section cited above does not apply to preempt the filing requirements of the Uniform Commercial Code.

Valley Feed has admitted that it did not file a financing statement pursuant to the Uniform Commercial Code. While its security interest might be valid and enforceable under Virginia Code Annotated § 8.9–203(1), it does not have priority over the claim of a trustee in bankruptcy as of the date of the filing of the petition for relief. Virginia Code Annotated § 8.9–301(d)(3). Vis-a-vis the trustee as of the date of filing of the bankruptcy petition, Valley Feed is an unsecured creditor to the extent of its claim as of that date.

■ The third issue for determination is whether § 547(e)(2)(C) brings the "transfers" within the 90–day period prior to debtor's bankruptcy. The trustee asserts that 11 U.S.C. § 547(e)(2) advances the date of the "transfer" to Valley Feed by the debtor of a security interest in the dairy termination program to the date immediately prior to the filing of the petition for relief. The trustee also asserts that there was another "transfer" on May 14, 1986, of the proceeds from the dairy termination program and that this "transfer" is also advanced to the date immediately prior to the filing of the petition for relief pursuant to 11 U.S.C. § 547(e)(2).

The Bankruptcy Code defines transfer as follows: "Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(50). This court is satisfied that the debtor's execution of form 36–1 to grant Valley Feed a security interest in his contract with the Federal Government under the dairy termination program was a transfer as defined in the Bankruptcy Code. Since Valley Feed failed to properly perfect its security interest pursuant to the Virginia Uniform Commercial Code, 11 U.S.C. § 547(e)(2)(C) operates to bring the effective date of the "transfer" to "immediately before the date of the filing of the petition." At the point of filing, then, Valley Feed was a secured creditor whose security interest was subordinate to the rights of persons or entities set forth in Virginia Code Annotated § 8.9–301. This group includes a trustee in bankruptcy from the date of the filing of the petition. Thus, the trustee in bankruptcy is entitled under the Virginia Uniform Commercial Code to subordinate the lien of Valley Feed which existed as of the date of the filing of the

petition for relief and the trustee is positioned to avoid the lien under 11 U.S.C. § 547. Given this situation, the critical issue becomes whether the trustee may employ the "transfer" definition to draw the payment made to Valley Feed on May 14, 1986, into the estate as a voidable preference.

The trustee attempts to characterize the payment made to Valley Feed on May 14, 1987, as a "transfer" which should be brought forward to the date immediately prior to the filing of the petition for relief under 11 U.S.C. § 547(e). This court is of the opinion that Congress did not intend that the sweep of the provisions found in § 547 to be so broad as to encompass payments made outside of the 90-day preferential transfer period, even if those payments were made under a security interest subordinate to the rights of the trustee. Should this court accept the trustee's argument in this case, then any creditor who has unknowingly extended credit under an unperfected security interest could be required to return to the estate all payments made by a debtor. In some instances these payments might span decades of debtor/creditor transactions under an unperfected security interest. Congress in enacting § 547 did not intend to disrupt commercial transactions to that extent. Instead, the major thrust of § 547 is to capture those transfers made when parties to the transfer knew that financial disaster was imminent. Congress selected 90 days as a period in which such transfers could be avoided.

The trustee cites in his memorandum of authority the case of *In re Kelley*, 3 B.R. 651 (Bankr.E.D.Tenn.1980). In the *Kelley* case, a car dealer was slow in perfecting a lien on the title to a car that was financed by the defendant lending institution in the case. The bankruptcy court in *Kelley* utilized 11 U.S.C. § 547(e) to move the date of perfection of the creditor's lien in the vehicle to the date immediately preceding the filing of the petition for relief. Thus, the trustee in bankruptcy was able to void the lien of the lending institution and recover the car (or the proceeds therefrom since the parties agreed that the car could be sold prior to the court's determination as to the validity and priority of the lien). However, the critical portion of the decision for the case at bar is a determination that not only was the trustee entitled to the car which was the collateral in the transaction, but also was entitled to recover any payments made by the debtor to the secured creditor within the 90 days prior to the filing of the petition for relief. The court found these payments, and only these payments, to be preferential transfers. *Kelley*, 3 B.R. at 655.

The parties have entered into no stipulation as to when the payment was made by the debtor to Valley Feed. The only stipulated fact is that the check to Valley Feed from the Commodity Credit Corporation was received by it on May 14, 1987, which is 142 days before debtor's filing. A "transfer of property by way of a check is made only when the debtor's bank ultimately honors the check." *In re Bob Grissett Gulf Shoppes, Inc.*, 34 B.R. 320, 322 (Bankr.E.D.Va.1983). If the transfer as defined in *Grissett* was made by the debtor (through the Commodity Credit Corporation) within the 90 days prior to the filing of the petition for relief, the trustee may be entitled to utilize the provisions of 11 U.S.C. § 547(b) to void the transfer and recover the proceeds of the check. However, if the transfer was made outside of the 90-day period, it appears that the trustee's cause of action under 11 U.S.C. § 547(b) with respect to the check would fail unless some "insider" status could be established. In any event, there is no stipulation as to when the transfer of the check took place. Since there is a material issue of fact, partial summary judgment cannot be granted.

An appropriate order will be entered implementing this memorandum opinion.