John C. HERRINGER *v.*
MERCANTILE BANK of Jonesboro, Arkansas

92-1462                                      866 S.W.2d 390

Supreme Court of Arkansas
Opinion delivered December 6, 1993

*Barrett, Wheatley, Smith & Deacon*, by: *Ralph W. Waddell,* for appellant.

*Snellgrove, Laser, Langley & Lovett*, by: *Todd Williams*, for appellee.

STEELE HAYS, Justice. This case involves a dispute between a landlord and a bank as to whether a landlord's lien or a bank's purchase money security interest has priority. The trial court held for the bank and we sustain that holding.

John Herringer, appellant, owns commercial property in Jonesboro. On March 15, 1990, he leased the property to Mike Crosby. The lease was to begin on April 15, 1990, but pursuant to an amendment to the lease, Crosby took possession of the premises prior to that date to begin work on a restaurant he planned to operate on the leased premises. Crosby began work on the premises immediately after the lease was signed.

On March 16, Crosby executed a promissory note and security agreement to the Mercantile Bank of Jonesboro (appellee) for $50,000. The loan was made to enable Crosby to purchase restaurant equipment and Crosby gave the bank a security interest in the equipment to be later purchased. The bank filed a financial statement pursuant to Ark. Code Ann. § 4-9-401 (1987) on March 21, 1990.

Crosby purchased equipment for the restaurant from Brasco of Jonesboro. The parties stipulated that the restaurant equipment was delivered to the leased premises between March 17 and April 14, 1990. It appears from the record that the earliest

any equipment was delivered was April 6, and neither party suggests otherwise. Crosby subsequently defaulted on the lease agreement and on the promissory note.

Both the bank and Herringer asserted an interest in the equipment left behind by Crosby. Herringer's claim was based upon our statutory landlord's lien enacted in 1987, Ark. Code Ann. § 18-16-108 (Supp. 1993):

> Property left on premises after termination of lease.
>
> Upon the voluntary or involuntary termination of any lease agreement, all property left in and about the premises by the lessee shall be considered abandoned and may be disposed of by the lessor as the lessor shall see fit without recourse by the lessee. All property placed on the premises by the tenant or lessee is subjected to a lien in favor of the lessor for the payment of all sums agreed to be paid by the lessee.

Herringer argued that the language of this statute gave him priority over all other liens on the same property or, at least that his interest attached at the same time as the bank's interest and therefore, the proceeds should be distributed pro rata.

The bank maintained it had a purchase money security interest (PMSI) in the equipment, and the law prior to the Uniform Commercial Code (UCC), which is generally applied in landlord's lien cases, would give the bank priority.

The parties agreed to sell the equipment and hold the proceeds in escrow pending a determination of their rights. The case was heard in chancery on a petition for declaratory judgment. The bank filed a motion for summary judgment, which was granted, and Herringer appeals from that decision.

Our analysis begins with the question of what law to apply, as the UCC specifically excludes landlord's liens. Ark. Code Ann. § 4-9-104(b) (1987). A majority of other jurisdictions dealing with this exclusion have applied their respective pre-code law to determine the outcome [see *Ex-Cell-O Corp* v. *Lincor Properties*, 762 P.2d 594 (Ariz. 1988)], and results have varied depending on the pre-code law in each state and the particular facts and interests competing with the landlord's lien. *See* e.g. the

discussion of Iowa law in *The Relative Priority of a Landlords Lien and Article Nine Security Interest*, 35 Drake L. Rev. 27 (1985-86); *Hartwell v. Hartwell Co., Inc.*, 167 N.J. Super. 91, 400 A.2d 529 (1979); *National Investment Trust v. First National Bank in Albuquerque*, 88 N.M. 514, 543 P. 2d 482 (1975).

■ However, we feel no constraint to apply pre-code law to this situation. Our legislature adopted the comprehensive UCC in preference to the law existing at that time and consideration, if not preference, should be given to the policies embodied in that law. Therefore, we will be guided primarily by the law and policies promoted by the UCC, and to the extent it is helpful in determining the legislative intent, we will examine our pre-code law as well.

We look first to the nature of each interest and the time at which it attached to the property. We will then weigh those factors in light of the competing considerations of each interest.

### The Bank's Purchase Money Security Interest

Under the Uniform Commercial Code, the bank's interest would be classified as a PMSI under Ark. Code Ann. § 4-9-107 (1987):

A security interest is a "purchase money security interest" to the extent that it is:

(a) Taken or retained by the seller of the collateral to secure all or part of its price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

■■ The bank had made a loan to Crosby to enable him to acquire restaurant equipment and the money was in fact so used, so the bank had a PMSI in the equipment. Ark. Code Ann. § 4-9-107(b). The bank took the appropriate steps for perfection by filing its financing statement on March 21, 1990. Ark. Code Ann. § 4-9-302 (1987). However, the bank's interest was not perfected until the security interest had attached, under Ark. Code Ann. § 4-9-303(1) (1987):

> (1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in §§ 4-9-302 and 4-9-304 — 4-9-306. *If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.* [Our emphasis.]

The Official Comment to Ark. Code Ann. § 4-9-303 (1987) states:

> (1) The term "attach" is used in this Article to describe the point at which property becomes subject to a security interest. *The requisites for attachment are stated in Section 9-203.* When it attaches a security interest may be either perfected or unperfected. "Perfected" means that the secured party has taken all the steps required by this Article as specified in § 9-303(1). [Our emphasis.]

*See also* Ark. Code Ann. § 4-9-312 (1987), Official Comment, Section (4).

■■ Under Ark. Code Ann. § 4-9-203 (1987), a security interest will attach when all the stated requirements are met: a valid security agreement has been executed, value has been given and the debtor has rights in the collateral. In this case the first two conditions had already been met and the only thing remaining was the debtor (Crosby) having rights in the collateral. There is no dispute between the parties that the debtor had rights in the collateral and therefore the bank's security interest attached, at the time the equipment was delivered to Crosby.[1] Therefore the bank's interest was perfected when Crosby received the equipment on April 6, 1990. Sections 4-9-203 and 4-9-303.

## The Landlord's Lien

Prior to the enactment of Ark. Code Ann. § 18-16-108 (1987), the only landlord's lien, either by statute or common law, recognized in Arkansas, pertained to crops. *See* Ark. Code Ann.

---

[1]The bank argues its interest attached at a time prior to the delivery of the goods. While the term "rights in the collateral" has been so interpreted [*see* B. Clark, *The Law of Secured Transaction Under the Uniform Commercial Code* § 2:04 (1988), and J. White & R. Summers, *Uniform Commercial Code* § 24-6 (3rd Ed. 1988)], no facts are stated in the record to sufficiently support that claim.

§ 18-41-101 (1987). The opinion in *Bennett* v. *Taylor*, 185 Ark. 794, 49 S.W.2d 608 (1932) contains this comment:

> We cannot assent to this conclusion [that Arkansas has adopted the common law landlord's lien], for the very reason that, throughout nearly a hundred years of the history of this State, no court or Legislature has ever recognized the harsh and oppressive remedies of the landlord's common law right of distraint, and, in the absence of a statutory direction, we are unwilling now to revive and apply that doctrine.

The only other comment we find on the question of landlord's liens, pertains to statutory liens generally, that such statutes must be construed strictly because they are in derogation of the common law and provide an extraordinary remedy that is not available to every merchant or worker. *Valley Metal Works* v. *A.I. Smith-Inland*, 264 Ark. 431, 572 S.W.2d 138 (1978).[2]

Since we have had no landlord's lien prior to § 18-16-108, we look to other jurisdictions to determine when attachment occurred. It is generally agreed that the lien attaches at the time the goods are placed on the property or at the beginning of the tenancy. 49 Am. Jur. 2d *Landlord & Tenant* § 688 (1970). Under the language of our statute, it appears the lien attaches at the time the goods are placed on the property. In this case then the landlord's lien would have attached to the goods on April 6, 1990, when they were delivered to Crosby.

There is no mechanism under our statute for filing a landlord's lien that would approximate the perfection requirement under the Code. *See* 35 Drake Law Rev., *supra* at 42, 46; B. Clark *supra*, at § 3.03[2][a]. As our law stands, when the landlord's lien attaches, no further perfection is required. There-

---

[2]Herringer also argues that the preferred status previously granted to landlords on crops, Ark. Code Ann. § 18-41-101 (1987), citing to *Gould-Galsbrath Supply Co.* v. *Triplett*, 167 Ark. 125, 266 S.W.2d 937 (1924), should be granted to landlords generally. The agricultural landlord, however, has historically enjoyed such preference, and, even now, agricultural goods occupy a special treatment under Ark. Code Ann. § 4-9-312(2) (1987). *See also Arkansas Law Notes 1988 Crop Financing: A Guide to Arkansas Law.* However, as discussed above, there has been no preference for the urban landlord, in fact, quite the opposite. With that background we find no merit in appellant's reliance on the crop lien statute.

fore, under Arkansas law, the priority of a landlord's lien is dependent on the time of attachment.

### Priority of Interests

While the bank had filed on its interest prior in time to Herringer's interest attaching, it was not perfected until the bank's interest had attached, as discussed above. Therefore we are faced with two interests which arose at the same time.

Under the Code (§ 4-9-312) the bank's PMSI would have priority over all other conflicting security interests under the provisions of Section (4):

> (4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty-one (21) days thereafter.

This provision of the code gives priority to a perfected PMSI, over other conflicting security interests in the same collateral, even when a PMSI creditor comes into existence after a competing financing statement is filed. B. Clark, *supra*, § 3.02[3].

The advantage given a PMSI is based on sound policy, for without the PMSI lender there would be no collateral. B. Clark, *supra* § 3.09[1]. Clark writes:

> The purchase money priority is a consistent theme throughout Article 9. Its policy is to protect those whose credit enables the debtor to acquire identifiable assets, even though the purchase money creditor may come into the picture long after a competing financing statement is filed. . . .

> . . . .Without the purchase money priority, secondary sources of credit would be chilled out of the picture unless they were willing and able to obtain subordination agreements from the floating lienor. The purchase money priority, an outgrowth of conditional sales financing, breaks up what would otherwise be a complete monopoly on the debtor's collateral.

*Id*. at § 3.01[2][e] and § 3.09[1]. To the same effect, see *White/Summers, supra* at § 26-5.

Similar policies favored PMSIs under pre-code law in Arkansas, as well as in other jurisdictions. *See* Ark. Code Ann. §§ 18-45-201 and 202 (1987), and in our cases interpreting those statutes. *Bond* v. *Dudley*, 244 Ark. 568, 426 S.W.2d 780 (1968); *Corning Motor Company* v. *White*, 173 Ark. 144, 293 S.W.2d 46 (1927); *Terrell* v. *Loomis*, 218 Ark. 296, 235 S.W.2d 961 (1951).[3] *And see* Official Comment to Ark. Code Ann. § 4-9-312(3) (1987).

In contrast to this favored status of the PMSI, the landlord's lien in Arkansas has not been favored and did not even exist until recently. And as a statutory lien it will be construed strictly against the landlord. In other jurisdictions, the current status of the landlord's lien varies, *supra*, but it was generally held in the past that the creditor in a conditional sale, the forerunner to the PMSI (*B. Clark, supra*, § 3.09[1]), had priority over other interests and over landlord's liens in particular. *See* 45 A.L.R. 949, *Landlord's Lien or Right of Distress on Property Sold to Tenant on Conditional Sale* (1926).

The legislature has continued to look with favor on PMSIs by adopting the UCC in 1962. Act 1961, No. 185. *See also*, the statement of purposes of the UCC at Ark. Code Ann. § 4-1-101 (1987). Therefore, when the legislature adopted the landlord's lien in 1987, it was mindful of this state's longstanding aversion to a landlord's lien and of the strict construction that would be applied to such legislation; it was also aware of the law and policies embodied in the UCC. *McCleod, Commissioner of Revenues* v. *Santa Fe Trail Transportation Co.*, 205 Ark. 225, 168 S.W.2d 413 (1943). On that basis, we believe the legislature never intended a landlord's lien which arose simultaneously with a PMSI to have priority.

We find support for this conclusion, by analogy, under the Code. While a landlord's lien is not a security interest under the Code, and therefore not a "conflicting security interest" under § 4-9-312, the landlord's lien in this case operates in effect, as

---

[3]These cases use the term conditional sale rather than PMSI. The conditional sale was the forerunner of the PMSI. B. Clark, *supra* at n.1, at 3.09 [1].

a floating lien on after-acquired property. See Ark. Code Ann. § 4-9-204 (1987) and Official Comment thereto, (1) and (2). It was exactly this kind of lien for which § 4-9-312 was structured, in order to protect the PMSI creditor. *See* B. Clark, *supra*, § 3.09[1].

Under this analogy the landlord's lien would be subject to the priority of the PMSI, even if the landlord's lien had attached *prior* in time to the PMSI. It follows that a landlord's lien which arises simultaneously with a PMSI would be subordinate. Having continued to approve the UCC and its policies, we believe the legislature would doubtless embrace those same policies for matters outside the scope of the UCC when they are in furtherance of the same interests. *See* Ark. Code Ann. § 4-1-101 (1987).

For the reasons stated, we affirm the order appealed from.