Hans NEF *v.* AG SERVICES of AMERICA, INC.,
and Ag Acceptance Corporation

CA 02-32 86 S.W.3d 4

Court of Appeals of Arkansas
Division II
Opinion delivered September 11, 2002

102

*Gibson & Hashem, P.L.C.*, by: *Paul W. Keith*, for·appellant.

*Wright, Lindsey & Jennings LLP*, by: *David M. Powell* and *Troy A. Price*, for appellees.

LARRY D. VAUGHT, Judge. This appeal involves competing security interests in the proceeds of a bankrupt farmer's 1998 crop. Appellant, Hans Nef, originally filed this action in Drew County Chancery Court against Lynn Kinder d/b/a Kinder Farm Partnership, Ag Services of America, Inc., and Ag Acceptance Corporation (Ag Services). On the motion of Ag Services, the Drew County Chancery Court dismissed the case against Kinder because of the automatic stay of the bankruptcy court and transferred the case against Ag Services to the Pulaski County Chancery Court, now Circuit Court. In a judgment entered September 18, 2001, the Pulaski County court granted a net award of $17,495 to Ag Services. From that judgment, comes this appeal.

Lynn Kinder, d/b/a Kinder Farm Partnership, rented farm land in Drew County from appellant, Hans Nef, for several years. The lease covering 1998 required Kinder to pay rent in the amount of $15,335 on February 1 and October 1 and $15,330 on December 31. Kinder gave Nef a security interest in his United States agricultural program payments. Ag Services provided crop input financing to Kinder for several years prior to and including 1998. On November 5, 1997, Kinder gave Ag Services a promissory note and an agricultural security agreement. This security agreement gave Ag Services a security interest in "all of Debtor's farm products, accounts, goods, inventory, chattel paper, general intangibles, documents and instruments, including, but not limited to: all annual and perennial crops of whatever kind, whether heretofore grown, now growing or hereafter grown . . . and all entitlements and payments . . . arising under governmental agricultural subsidy. . . ." This security interest was not limited to one particular crop year. Ag Services filed financing statements according to the requirements of the Arkansas Uniform Commercial Code, the most recent of which was filed on November 24, 1997. Kinder also executed a U.S.D.A. CCC-36 assignment of payment form in favor of Ag Services on November 13, 1997. Ag Services filed this form with the appropriate county Farm Services Administration office on June 1, 1998.

On January 14, 1998, Nef filed a financing statement for Kinder's 1998 crop that covered:

> All crops of rice, wheat, soybeans & milo grown on Secured Party's lands in Drew County, AR, . . . during the 1998 crop year, together with all products & proceeds thereof; accounts, general intangibles arising from or relating to the sale of farm products, farm products thereof; all crop insurance thereon and proceeds thereof; all Federal Agricultural Program payments ther[e]fore, in cash or in kind.

On March 6, 1998, Kinder also executed a CCC-36 form in favor of Nef, which was filed with the Farm Services Administration office on March 17, 1998.

On August 31, 1998, Nef received an assignment from Kinder of a U.S.D.A. production flexibility contract (PFC) pay-

ment of $32,830. He applied it to Kinder's 1997 rent and to an earlier debt of Kinder. Kinder did not pay the rent due in October and December 1998. At the time of trial, Kinder owed Nef $36,381.

In January 1999, Riceland Foods gave Kinder a $26,401 check dated December 29, 1998, for the purchase of certain products of the 1998 crop. This check was payable to Kinder, Nef, and Ag Services. Kinder promptly endorsed this check and gave it to Ag Services. Nef refused to endorse it. On February 23, 1999, Nef filed a complaint against Kinder and Ag Services similar to the one filed in this action. He did not, however, complete service of process on the defendants. Kinder filed a petition in bankruptcy on March 17, 1999.

Nef filed this action against Kinder and Ag Services on June 28, 1999, asserting a paramount interest in the proceeds of the Riceland Foods check by virtue of his statutory landlord's lien and promissory note. In response, Ag Services asserted the statute of limitations and filed a counterclaim, contending that it had a prior security interest in the proceeds of Kinder's 1998 crop and that Nef had wrongfully received the August 1998 PFC payment of $32,830. On July 13, 1999, the bankruptcy court granted relief from the bankruptcy stay as to the funds in dispute in this action. In August 2000, Ag Services filed a motion for summary judgment, arguing that, as a matter of law, Nef had converted the $32,830 PFC payment. The judge denied this motion.

At trial, the relevant facts were not in dispute. The judge awarded Nef $15,335 for the rent due on December 31, 1998. After consideration of that award, he concluded that Ag Services was entitled to the proceeds of the Riceland Foods check and to the August 1998 PFC payment "because both of those items would have been available to apply to Ag Services' debt ($30,801.94 as of June 19, 2001) and a reasonable attorney's fee ($13,100) incurred in collecting the debt." The judge found that Nef had no interest in the Riceland Foods check and awarded Ag Services judgment for $32,830 "because Hans Nef converted that Government Payment, as to which Ag Services had a prior security interest." The judge offset the $15,335 award in favor of Nef

against the $32,830 award to Ag Services, and gave a judgment to Ag Services for $17,495.[1]

### Arguments on Appeal

Nef makes the following arguments on appeal: (1) the trial judge erred in awarding attorney's fees to Ag Services; (2) the trial judge erred in failing to award Nef the amount of rent due on October 1, 1998; (3) the trial judge erred in applying Article 9 of Arkansas's Uniform Commercial Code to the parties' interests in the August 1998 PFC check; (4) the trial judge erred in giving priority to Ag Services's security interest in the PFC check because Ag Services did not act in good faith. We reduce the award of attorney's fees and affirm the trial judge's decision in all other respects.

### Attorney's Fees

The general rule in Arkansas is that attorney's fees are not awarded unless expressly provided for by statute or rule. *Security Pac. Housing Servs., Inc. v. Friddle,* 315 Ark. 178, 866 S.W.2d 375 (1993). Arkansas Code Annotated section 16-22-308 (Repl. 1999) provides for a reasonable attorney's fee in certain civil actions, including actions to recover on promissory notes and for breach of contract. This statute does not, however, provide for the recovery of attorney's fees in tort actions. *Reed v. Smith Steel, Inc.,* 77 Ark. App. 110, 78 S.W.3d 118 (2002). The prevailing party in a conversion action is not entitled to an award of attorney's fees. *Mercedes-Benz Credit Corp. v. Morgan,* 312 Ark. 225, 850 S.W.2d 297 (1993).

"Where the plaintiff has a security interest in the converted property to secure not only the principal debt, but also attorney fees incurred in collecting the debt, attorney fees are recoverable." 90 C.J.S. *Trover and Conversion* § 134 (2002). *Accord* 18 AM. JUR.2d *Conversion* § 120 (1985). In *McQuillan v. Merce-*

---

[1] We note that these separate figures, when considered together, do not precisely correspond to the net amount of the award to Ag Services. Because the parties have not questioned the accuracy of the judge's calculations, we need not address the matter.

*des-Benz Credit Corp.,* 331 Ark. 242, 961 S.W.2d 729 (1998), the Arkansas Supreme Court drew a distinction between legal fees incurred in attempting to recover collateral and those incurred in litigating a conversion claim. It held that the secured party was not entitled to an award of attorney's fees for its expenses incurred in litigating conversion and replevin claims, as opposed to the costs incurred in the recovery of the collateral itself.

█ In this case, the trial judge agreed with Ag Services that its security interest in the Riceland Foods check ($26,401) was superior to Nef's interest. It was, therefore, permissible to award attorney's fees to Ag Services under section 16-22-308 for that award. Also, Kinder's November 5, 1997, promissory note gave Ag Services the right to collect a reasonable attorney's fee in connection with the enforcement of the note. This agreement was enforceable according to its terms and was independent of section 16-22-308. *See Marcum v. Wengert,* 344 Ark. 153, 40 S.W.3d 230 (2001); *Griffin v. First Nat'l Bank,* 318 Ark. 848, 888 S.W.2d 306 (1994). However, the trial judge also awarded Ag Services $32,830 for Nef's conversion of the PFC payment. Based on the supreme court's decision in *McQuillan,* the trial judge erred in awarding attorney's fees in regard to the conversion claim. Accordingly, we reduce appellees' attorney's fee award from $13,100 to $8,000.

### Statute of Limitations

In awarding Nef $15,335 for the December 31, 1998, rent, the trial judge apparently applied the six-month limitations period imposed on a landlord's agricultural lien set forth in Ark. Code Ann. § 18-41-101 (1987). That statute provides: "Every landlord shall have a lien upon the crop grown upon the demised premises in any year for rent that shall accrue for the year. The lien shall continue for six (6) months after the rent shall become due and payable, and no longer." Appellant argues that, because the trial judge should have held that the limitations period was tolled between the time Kinder filed his bankruptcy petition and thirty days after the bankruptcy court granted relief from the stay, his claim for the October 1998 rent was filed within the limitations period. Appellees respond that, because the statute does not pro-

vide for any exceptions, this court should apply the general rule that lien statutes must be construed strictly. *See Herringer v. Mercantile Bank of Jonesboro,* 315 Ark. 218, 866 S.W.2d 390 (1993).

The chronology of events is as follows:

October 1, 1998 — rent was due;

December 31, 1998 — additional rent was due;

February 23, 1999 — appellant filed a complaint that was not served on the defendants;

March 17, 1999 — Kinder filed the petition in bankruptcy;

June 28, 1999 — this action was filed;

July 13, 1999 — relief from the bankruptcy stay was entered.

 Under Ark. R. Civ. P. 4(i), appellant had 120 days within which to complete service of the February 1999 summons and complaint, or suffer a dismissal without prejudice. *See Bakker v. Ralston,* 326 Ark. 575, 932 S.W.2d 325 (1996). According to appellant, the filing of Kinder's bankruptcy petition tolled the running of the 120 days. He asserts that his claim for the October 1998 rent was viable when he filed the February 23, 1999, action and that he did not have to serve the summons and complaint until thirty days after the stay was lifted. The filing of a bankruptcy petition operates as a stay, applicable to all entities, of any act to obtain possession of, or to enforce a lien against, property of the estate. See 11 U.S.C. § 362(a)(4) (2002). This automatic stay remains in effect until the property is no longer included within the estate. *See* 11 U.S.C. § 362(c)(1) (2002); *see also Stogsdill v. Stogsdill,* 76 Ark. App. 474, 68 S.W.3d 324 (2002). When a creditor is stayed from commencing or continuing an action against a debtor in bankruptcy, 11 U.S.C. § 108(c) (2002) gives the creditor an additional thirty days to enforce its claim once it receives notice of the termination of the stay. Therefore, appellant argues, the statute of limitations did not run on his claim for the October 1998 rent.

 Although the filing of a voluntary petition in bankruptcy effects an automatic stay as to the commencement or con-

tinuance of any claim against the debtor or his estate, the stay is not for the benefit of other parties. *See Aluminum Co. of Am. v. Higgins,* 5 Ark. App. 296, 635 S.W.2d 290 (1982); *Van Balen v. Peoples Bank & Trust Co.,* 3 Ark. App. 243, 626 S.W.2d 205 (1982). Therefore, unless the Riceland Foods check was part of the estate in bankruptcy, this action was not affected by the stay. Appellant's argument is premised upon the assumption that the Riceland Foods check, upon which he sought to impose his landlord's lien, was a part of the bankruptcy estate. However, he has cited no legal authority to support his claim that it was part of the bankruptcy estate. 11 U.S.C. § 541(a)(1) (2002) provides that the bankruptcy estate consists of all legal or equitable interests of the debtor in property at the time that the debtor initiated the bankruptcy action. Here, that date was March 17, 1999. Kinder endorsed the Riceland Foods check and delivered it to Ag Services in January 1999; it is, therefore, not apparent that it was part of the bankruptcy estate. Although the trustee could have attempted to bring it back into the estate as a preferential transfer under 11 U.S.C. § 547 (2002), there is nothing in the record to suggest that this was done. Therefore, appellant has not demonstrated that the bankruptcy stay tolled the running of the statute of limitations for the landlord's crop lien.

■ ■ Additionally, Nef argues in his reply brief that the trial judge's ruling on this issue ignores the intent of Ark. Code Ann. § 16-56-126 (1987), which provides that, if any action is commenced within the time prescribed by a statute and the plaintiff suffers a nonsuit, he may commence a new action within one year. That saving statute, however, does not apply if the plaintiff failed to complete timely service on the defendant. *See Wright v. Sharma,* 330 Ark. 704, 956 S.W.2d 191 (1997); *Thomson v. Zufari,* 325 Ark. 208, 924 S.W.2d 796 (1996); *Hicks v. Clark,* 316 Ark. 148, 870 S.W.2d 750 (1994); *Forrest City Machine Works, Inc. v. Lyons,* 315 Ark. 173, 866 S.W.2d 372 (1993); *Green v. Wiggins,* 304 Ark. 484, 803 S.W.2d 536 (1991). Because Nef did not complete service on Ag Services in the February 1999 action, that statute does not apply here. We reject Nef's second point on appeal.

*The Application of the Uniform Commercial Code*

Nef argues in his third point that the trial judge erred in applying the provisions of Article 9 of the UCC[2] to the PFC payment of \$32,830 because federal law governs the assignment and taking of security interests in such payments. Nef asserts that Ark. Code Ann. § 4-9-104(a) (Supp. 1999) supports his position that the UCC does not govern the priority of security interests in the PFC payments. That statute provides: "This chapter does not apply: (a) To a security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property. . . ." Also, Ark. Code Ann. § 4-9-302(3)(a) (Supp. 1999) provides:

> The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to . . . a statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title which specifies a place of filing different from that specified in this chapter for filing of the security interest . . . .

The doctrine of federal preemption is based upon the United States Constitution's supremacy clause. State laws that interfere with, or are contrary to, the laws of Congress are invalid. *Ciba-Geigy Corp. v. Alter,* 309 Ark. 426, 834 S.W.2d 136 (1992). Congressional intent to supplant state authority in a particular field may be express or implied. *Id.* Here, there is no express preemption of state law. Implied preemption can occur in the following circumstances: (1) when the scope of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the state to act; (2) when the state and federal law actually conflict; (3) when compliance with state and federal law is physically impossible; (4) when the state law stands as an obstacle to the accomplishment of the full objectives of Congress. *Id.* The

---

[2] The Arkansas General Assembly significantly amended Arkansas's version of the UCC in 2001. Because those amendments are not relevant to this case, we have cited the code sections as they appeared before they were amended.

historic police powers of the states are not to be superseded by a federal act unless that is the clear and manifest purpose of Congress. *Id.* The burden is on the moving party to prove that Congress intended to preempt state law. *Id.*

Appellant points out that the assignment of PFC payments is controlled by 16 U.S.C. § 590h(g) (2002). That statute states:

> A payment that may be made to a producer under this section may be assigned only in accordance with regulations issued by the Secretary. This subsection shall not authorize any suit against or impose any liability on the Secretary, any disbursing agent, or any agency of the United States if payment is made to the producer without regard to the existence of any such assignment.

The Department of Agriculture's regulations dealing with the assignments of cash payments by the Agricultural Stabilization and Conservation Service and the Commodity Credit Corporation are set forth at 7 C.F.R. § 1404.1 through 1404.9 (2002). However, these regulations narrowly address the manner in which such assignments may be made; they do not address the priority of competing security interests in the payments. Except for the federal tax lien statutes, nearly all of the statutes enacted by the United States Congress "are skeletal in nature, and typically leave open such matters as requirements for creation of the interest, priorities, and default rights." James J. White & Robert S. Summers, *Uniform Commercial Code* § 30-12, at 77 (4th ed. 1995). The authors of that treatise write that most courts choose to "flesh out a federal statutory skeleton with Article 9 law . . . on the theory that Congress had no power to or did not intend to pre-empt the entire field." *Id.* at 77-78.

Nef has cited no case holding that Congress intended to implicitly preempt Article 9 of the UCC in enacting this legislation. We believe that *In re Endicott*, 239 B.R. 529 (Bankr. E.D. Ark. 1999), supports the trial judge's application of Arkansas's Uniform Commercial Code to the filing and perfection of the security interests involved in this case. *See also In re Propst,* 81 B.R. 406 (Bankr. W.D. Va. 1988). In *Endicott*, the bankruptcy court held that the federal regulation permitting a farmer to execute an assignment of his interest in the proceeds of the Depart-

ment of Agriculture's Crop Loss Disaster Assistance Program, and purporting to limit the federal government's liability if such payments were improperly made, did not preempt Arkansas's version of Article 9. The court recognized that the regulation was to protect the government from liability if such payments were made to an unauthorized person and not to create an alternate federal filing scheme for security interests in such payments. Accordingly, we also reject this argument on appeal.

In his fourth point on appeal, Nef argues that, because Ag Services did not act in good faith, its security interest in the PFC payment should not receive priority. Nef contends that, because Ag Services had notice of Nef's lease with Kinder, wherein Kinder agreed not to assign or pledge his PFC payments without Nef's consent, and because Ag Services knew that Kinder had given a security interest in those payments to Nef, Ag Services acted in bad faith.

■ Nef's argument is unpersuasive. Without a doubt, Ark. Code Ann. § 4-9-312(5) is a "pure race" statute:

> That is, the one who wins the "race" to the court house to file is superior without regard to the state of his knowledge. The section nowhere requires that the victor be without knowledge of its competitor's claim. Example 3 in Comment 5 to 9-312 illustrates the irrelevance of knowledge under the subsection. One justification for that rule is the certainty it affords. Under 9-312(5) no disappointed secured creditor can trump up facts from which a compassionate court might find knowledge on the part of the competitor. If the competitor filed first or perfected first, as the case may be, that's the end of it; this party wins even if it knew of the other party's prior but unperfected claim.
>
> There might be circumstances in which the first party to file should be subordinated because of bad faith. For example, the second might be in bad faith because of a fiduciary relation with the first and thus a duty to inform the first. We believe the courts should be slow to recognize such exceptions.

James J. White & Robert S. Summers, *Uniform Commercial Code* § 33-4, at 317-18 (4th ed. 1995).

The courts of Arkansas have not adopted Nef's argument. For example, in *Lawhon Farm Supply, Inc. v. Hayes*, 316 Ark. 69, 870 S.W.2d 729 (1994), the supreme court held that the buyer of a crop had no statutory duty to preserve a creditor's security interest because it had not been properly perfected, even though the buyer had actual knowledge that the creditor was claiming a security interest.

 Arkansas Code Annotated section 4-9-401(2) (Repl. 1991) provides:

> A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

However, that statute affords no relief to Nef. In *Affiliated Food Stores, Inc. v. Farmers & Merchants Bank of Des Arc*, 300 Ark. 450, 780 S.W.2d 20 (1989), the supreme court made it clear that, in this context, "knowledge of the contents" means actual knowledge rather than constructive knowledge. Although Ag Services received a copy of Nef's and Kinder's lease, Nef did not prove that Ag Services had actual knowledge of the contents of Nef's financing statement. Therefore, we also affirm on this point.

Affirmed as modified.

JENNINGS and CRABTREE, JJ., agree.