In re Louis Samuel JAMES, Jr. aka Sammy James, fdba Sammy James Farms, fdba James Brothers Farms Partnership, fdba Double J. Trucking, and Carolyn Ann James, Debtors.

Bank of McCrory, Plaintiff,

v.

William P. Morrison, Jr., Joseph M. Morrison, JPJ Farms, Inc., McCaughan Farms Partnership, A. Jan Thomas, Jr., Louis Samuel James, Jr., Defendants.

JPJ Farms, Inc., McCaughan Farms Partnership, John T. Morrison, Joseph M. Morrison, William P. Morrison, Jr., Counter–Claimants,

v.

Bank of McCrory, Counter–Defendant.

JPJ Farms, Inc., McCaughan Farms Partnership, John T. Morrison, Joseph M. Morrison, William P. Morrison, Jr., 3rd Party Plaintiffs,

v.

Sammy James Farms Partnership, U.S. Dept. of Agriculture Farms Services Agency, A. Jan Thomas, Jr., 3rd Party Defendants.

No. 2:06–bk–12899M.

United States Bankruptcy Court, E.D. Arkansas, Helena Division.

May 2, 2006.

James C. Luker, Attorney at Law, Wynne, AR, for Debtor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On July 13, 2006, Louis and Carolyn James (Debtors) filed for voluntary relief under Chapter 7 of the United States Bankruptcy Code. Jan Thomas, Esq., was the duly appointed Trustee.

On July 26, 2006, the Bank of McCrory (Bank) initiated this adversary proceeding to determine the extent and priority of its claim of a security interest in crops produced by the Debtors for the crop year 2005. The dispute concerns the priority of the Bank's security interest in crops produced in 2005 and the claim of a landlords' lien by the owners of the property upon which the crop was produced.

A hearing was held on December 13, 2006, and the matter was taken under advisement. The proceeding before the Court is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(K), and the Court may enter a final judgment in the case.

### I.

### FACTS

The land upon which the crops were produced is located in Woodruff County, Arkansas, and is owned by the Morrison family. Title to the real estate is held as follows: an undivided one-half interest in fee simple is owned by brothers William P. Morrison, Jr., John T. Morrison, and Joseph M. Morrison. The remaining undivided one-half interest is owned by JPJ Farms, Inc. JPJ Farms, Inc. in turn is owned two percent by Ruth McCaughan Morrison, the mother of the three brothers, and the remaining stock is owned in equal shares by three separate trusts, each

for the benefit of the three brothers mentioned above. The Morrison family conducts business as McCaughan Farms, a general partnership, consisting of William P. Morrison, Jr., John T. Morrison, Joseph M. Morrison, and JPJ Farms, Inc.

The Morrison family, doing business as McCaughan Farms, entered into a written farm lease with the Debtors who were doing business as Sammy James Farms, a general partnership. The lease provided for annual cash rent of $189,963.00 payable on December 1 st of each crop year. The Debtors did not pay the rent for the 2005 crop year. The crop, consisting of rice and soybeans, was harvested and held in storage, and the Trustee was authorized by the Court, with the agreement of the parties, to sell the crop free and clear of all claims with the claims of liens attaching to the proceeds. The net proceeds amounted to the sum of $534,769.26, which is being held by the Trustee.

## II.

### THE COMPETING LIENS

The Bank made a crop production loan to the Debtor d/b/a Sammy James Farms for the 2005 crop of soybeans and rice in the sum of $1,150,000.00. The Debtor d/b/a Sammy James Farms granted the Bank a security interest in certain collateral including all crops growing or to be grown in Woodruff County, Arkansas, and the security interest was properly perfected by filing a financing statement. The financing statement specifically named 950 acres of rice, 1323 acres of soybeans, and 84 acres of wheat, all on McCaughan Farms land located in Woodruff County, Arkansas.

In addition, during the harvest season, the Debtors delivered some of their soybeans to a grain elevator owned by M.D. Thompson & Son Co. and received in return unpriced scale tickets indicating the quantity, quality, and type of grain deliv-

ered to the storage facility. The soybeans brought the sum of $184,255.92 when sold by the Trustee. The Debtor, Sammy James, on behalf of the partnership executed a document stating that "[a]ttached are M.D. Thompson & Son Warehouse unpriced scale tickets for 2005 soybeans which are signed and pledged to Bank of McCrory in connection with Loan No. 650–352 and security agreement." The Debtors delivered the assignment and the scale tickets to the Bank which took physical possession of them, presumably on July 3, 2006.

No one disputes that the rent was due on December 1, 2005, in the sum of $189,963.00 and that it was not paid. On May 19, 2006, a complaint was filed in the Circuit Court of Woodruff County, Arkansas, by William P. Morrison, Jr., John T. Morrison, Joseph M. Morrison, JPJ Farms, Inc., and McCaughan Farms Partnership against the Debtors, individually, and Sammy James Farms to foreclose a landlords' lien for the unpaid rent. The Debtors and Sammy James Farms filed an answer to the complaint on June 16, 2006. The bankruptcy case was filed on July 13, 2006.

## III.

### ARGUMENTS

Counsel for the Bank argued at trial that because the Morrison family members operated their business as a partnership, the debtor/farmer that produced the crop is actually a subtenant, McCaughan Farms Partnership is the primary tenant, and the owners of the land—the three Morrison brothers and JPJ Farms, Inc.—are the landlords. The Bank's counsel argued that Arkansas law prohibits the assignment of the landlords' lien without notice and concludes that out of all of this confusion, the Bank's security interest prevails over the landlords' lien. The Bank also claims that the assignment of the scale

tickets means that their secured interest has a priority over the landlords' lien. The Bank argued further that the Court should order the Trustee to sue the Morrison family to avoid the landlords' lien under 11 U.S.C. § 545(3).[1]

The Morrison family argued that the lien was perfected under state law before the Bankruptcy case was filed and that the foreclosure was timely filed with everyone who could own an interest in the real estate named as a plaintiff; therefore, the landlords' lien has priority under state law.

## IV.

### DISCUSSION

In order to determine whose crop lien has priority, it must first be decided whether a landlords' lien will prevail over a properly perfected security interest in the same crops. If the landlords' lien prevails, it must be determined if the partnership, which is not the title holder of record, can be considered a landlord in order to defeat the Bank's priority in the crops. Finally, if the landlords' lien is valid, it must be determined whether the landlords' lien can be avoided by the Trustee in bankruptcy.

### A.

*A landlords' lien will prevail over properly perfected security interest in crops*

■ A security interest attaches when (i) the debtor has signed a security agree-

ment in favor of the secured party that provides a description of the collateral, (ii) value has been given by the secured party to the debtor, and (iii) the debtor has rights in the collateral. Ark.Code Ann. § 4–9–203(b)(1–3) (Michie 2003).

In order to perfect a security interest, the secured party is required to file its financing statement with "the office of the circuit clerk in the county in which the debtor is located in this state if the debtor is engaged in farming operations and the collateral is ... farm products...." Ark. Code Ann. § 4–9–501(a)(2) (Michie 2003). The term "farm products" includes "crops grown, growing or to be grown." Ark. Code Ann. § 4–9–102(34) (Michie 2003).

The landlords' lien statute provides:

(a) Every landlord shall have a lien upon the crop grown upon the demised premises in any year for rent that shall accrue for the year.

(b)(1) The lien is perfected and shall have priority over a conflicting security interest in or agricultural lien on the crop regardless of when the conflicting security interest or agricultural lien is perfected.

(2) The lien shall continue for six (6) months after the rent shall become due and payable, and no longer.

Ark.Code Ann. § 18–41–101 (Michie 2003).[2]

■ The Bank properly perfected its security interest by filing a financing state-

---

1. The Bank made other arguments regarding the effect of the assignment of the scale tickets which this court considered, but found to be without legal support.

2. The A.C.R.C. Notes regarding Section 18–41–101 state that

[t]he General Assembly has determined that by the enactment of Act 1439 of 2001 it inadvertently changed the law regarding landlords' liens on crops. It is the intent of this act to correct that inadvertent change,

remove landlords' liens on crops from the application of the Uniform Commercial Code, reestablish Arkansas Code 18–41–101 and 18–41–103 as the law applicable to landlords' liens on crops, and thereby make the landlords' liens under Arkansas Code 18–41–103 superior to all other liens on the same collateral.

See *NEF v. AG Services of America, Inc.: Revised Article 9 Brings Uncertainty to Holders of Agricultural Landlord's Liens,* 56 Ark. L.Rev. 871 (2004).

ment with the Circuit Clerk of Woodruff County, Arkansas, on April 21, 2005. However, the landlords' lien has priority regardless of when the conflicting security interest was perfected. Ark.Code Ann. § 18–41–101(b)(1) (Michie 2003). A landlords' lien must be foreclosed within six months after the rent is due or it lapses. *Nef v. Ag Servs. of Am., Inc.*, 79 Ark.App. 100, 86 S.W.3d 4, 9 (2002). The Morrison family timely commenced its foreclosure action. The Bank gained nothing by taking an assignment of the scale tickets because the only way to perfect a security interest in crops is by filing under the Uniform Commercial Code as stated above. Therefore, a landlords' lien has priority over a Bank's perfected security interest in the same crops because of the provision of Arkansas Code Annotated Section 18–41–101.

### B.

*A Landlords' Lien and a Partnership*

Arkansas Code Annotated Section 18–41–101 does not define who constitutes a landlord. Black's Law Dictionary defines a landlord as "[o]ne who leases property to another." *Black's Law Dictionary* 883 (7th ed.1999). The question then arises as to who actually leased the property when the lessor of the lease is a partnership but the title to the real estate subject to the lease is in the name of the individuals and a corporation that comprise that partnership.

■ "It is well established that it may always be shown that property, title to which is taken in the name of individuals, is in truth and fact partnership property." *Vick v. Albert*, 17 A.D.3d 255, 256, 793 N.Y.S.2d 413, 415 (2005) (quoting *Benham v. Hein*, 50 A.D.2d 808, 809, 376 N.Y.S.2d 581 (1975)). Under Arkansas law, it is ultimately the intention of the partners that controls whether property belongs to the partnership or the partners individual-

ly. *In re Curtis*, 363 B.R. 572, 577–78 (Bankr.E.D.Ark.2007); Ark.Code Ann. § 4–46–204 (Michie 2003). *See also Stafford v. McCarthy*, 825 S.W.2d 650, 656–657 (Mo.App.1992) (ownership is not determined by legal title, but by the parties' intent). The name or names that appear on the deed of record is irrelevant when determining whether land is actually a partnership asset; if the partners intended that the land be a partnership asset, equitable title vests in the partnership. *See King v. Evans*, 791 S.W.2d 531, 533 (Tex. App.1989).

■ Price Morrison described the McCaughan Farm as a "long standing entity . . . . [i]t's really just created as a matter of convenience. The partners in that partnership (McCaughan Farm) are the same owners of the land in the same proportion. It's really just an entity for convenience." (Tr. at 102.)

Although the Morrison family created a formal partnership, they did not formally transfer the land to the partnership. However, it is clear from the facts of the case that the Morrison family intended for McCaughan Farms Partnership to have equitable title to the land and act as the landlord. The Bank's argument that the Morrison family arrangement created a sub-tenancy is without merit. Therefore, from the evidence presented, McCaughan Farms Partnership is the landlord in this case and is entitled to assert its landlords' lien in the crops produced on the Morrison Family lands.

### C.

*The Trustee's Power to Avoid the Landlords' Lien*

According to 11 U.S.C. § 545(3), "[t]he trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien . . . is for rent. . . ." The

trustee testified that he did not pursue this action because he did not believe he would prevail. The Bank argued at trial that the Court should order the Trustee to file a complaint to avoid the landlords' lien under 11 U.S.C. § 545(3).

This argument must fail. The cause of action to avoid a statutory lien belongs to the Trustee and he has elected not to assert the cause of action. The Trustee may well have the authority under 11 U.S.C. § 545(3) to avoid a landlords' lien even though under state law, a landlords' lien has priority over all other conflicting liens. See *In re Wedemeier*, 237 F.3d 938 (8th Cir.2001); *In re WRT Energy Corp.*, 169 F.3d 306 (5th Cir.1999); *In re Hilligoss*, 849 F.2d 280 (7th Cir.1988); *Baron v. Waldo (In re Waldo)*, 70 B.R. 16 (Bankr.N.D.Iowa 1986); Collier's on Bankruptcy ¶ 545.04 at 545–14 (Alan. N. Resnick & Henry J. Sommers et al. eds., 15th ed. rev.2006). However, the Court declines to order this Trustee to file any cause of action, including this one, because there may be other reasons the Trustee declines to bring suit, including a lack of benefit to the estate.

## VI.

### CONCLUSION

Therefore, for the reasons stated, the landlords' lien of the Morrison family d/b/a McCaughan Farms, a partnership, is determined to have a first priority over all other claims of liens in crops produced on the Morrison lands.

IT IS SO ORDERED.