Cite as 2026 Ark. App. 281

# ARKANSAS COURT OF APPEALS
### DIVISIONS I & II
#### No. CV–25–68

|  |  |
|---|---|
| LANG PROPERTIES, LLC<br>APPELLANT<br><br>V.<br><br>MICHAEL GROBER, HIS HEIRS AND ASSIGNS; THE CITY OF FORT SMITH, ARKANSAS; SEBASTIAN COUNTY, ARKANSAS; AND ANY PERSON, ENTITY OR ORGANIZATION CLAIMING ANY RIGHT, TITLE, INTEREST OR OWNERSHIP IN THE REAL PROPERTY LOCATED AT SECTION 33, TOWNSHIP 08N, RANGE 32W, ACREAGE 0, LOT 152, SOUTHBROOK ADDITION TO THE CITY OF FORT SMITH, ARKANSAS<br>APPELLEES | **Opinion Delivered**: May 6, 2026<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FCV-23-1066]<br><br>HONORABLE R. GUNNER DELAY, JUDGE<br><br><br><br>AFFIRMED |

## CASEY R. TUCKER, Judge

Lang Properties, LLC ("Lang Properties"), appeals the circuit court's order entered on October 8, 2024, granting in part and denying in part its motion for summary judgment. The circuit court found that Lang Properties was entitled to a fee simple title in the property subject to certain liens of the City of Fort Smith ("City") and Sebastian County, Arkansas ("County"). On appeal, Lang Properties argues that the City and County liens were extinguished and that Lang Properties is entitled to a fee simple title without encumbrances. We affirm.

## I. *History*

On January 20, 2021, Lot 152 of the Southbrook Addition to the City of Fort Smith (the "Property") was certified by the Sebastain County Collector ("County Collector") to the Arkansas Commissioner of State Lands ("Commissioner") for nonpayment of property taxes for 2018–2021.[1] On July 11, 2023, Caleb Lang ("Lang") was the successful bidder, paying $71,000 for the Property at a tax sale conducted by the Commissioner. Lang obtained a limited warranty deed from the Commissioner, which was filed July 28.[2] As part of the sale of the Property, the Commissioner performed a lien search. The search revealed that between April 2019 and August 5, 2021, the City performed clean-up work on the Property on four occasions, which resulted in four liens being filed with the County Collector pursuant to Arkansas Code Annotated section 14-54-904(a)(2)(A) (Supp. 2025). The four liens are as follows: (1) recorded May 6, 2019, for $198.79 (work done April 19, 2019); (2) recorded December 14, 2020, for $199.44 (work done October 8, 2020); (3) recorded June 28, 2021, for $211.01 (work done June 16, 2021); and (4) recorded August 23, 2021, for $184.55 (work done August 5, 2021) (collectively, "Disputed Clean-Up Liens").[3]

---

[1]Arkansas Code Annotated section 26-37-101(b) (Repl. 2020) provides that "[t]he county collector shall hold all tax-delinquent lands in the county for one (1) year after the date of delinquency, and, if the lands are not redeemed by the certification date . . . the county collector shall transmit it to the state by certification, after notice as provided in this chapter, indicating all taxes, penalties, interest, and costs due and the name and last known address of the owner of record of the tax-delinquent lands."

[2]Lang quitclaimed his interest to Lang Properties on August 7, 2023.

[3]In addition, the City had performed more work on the property immediately before the sale and recorded the following lien: recorded June 29, 2023, for $2,657.67 (work done May 30, 2023). Lang asserts that only the Disputed Clean-Up Liens are at issue.

On November 13, 2023, Lang Properties filed a complaint pursuant to Arkansas Code Annotated § 26-38-201 (Repl. 2020) to confirm the tax sale and quiet title naming as defendants, Michael Grober[4] (and his heirs and assigns), the City, and any person claiming an interest in the Property. In a January 3, 2024 amended complaint, Lang Properties also named the County. Although there was no dispute below that Lang obtained a fee simple title, the issues for the circuit court to decide were whether the Property obtained by Lang was subject to the Disputed Clean-Up Liens asserted by the City and the County and whether Lang Properties was responsible for the 2022 real property taxes not yet delinquent at the time of the sale.

The City certified the Disputed Clean-Up Liens to the County before the sale of the Property; however, the Disputed Clean-Up Liens had not been collected when the Commissioner sold the Property to Lang.

The County Collector would not allow the 2023 real property taxes to be paid by Lang Properties without first paying the 2022 real property taxes. The 2022 real property taxes in the amount of $955.52 were not delinquent at the time of the sale. The County asserted that the limited warranty deed from the Commissioner to Lang in July 2023 extinguished the taxes owed from 2018–2021 and that the 2022 real property taxes did not become delinquent and eligible for certification until October 15, 2023. Lang Properties asserted that it was not responsible for the Disputed Clean-Up Liens or the 2022 real property taxes.

---

[4]Michael Grober was the former property owner who passed away in 2017.

On July 3, Lang moved for summary judgment, asking, inter alia, that the circuit court find that the sale from the Commissioner be confirmed and that title be vested in Lang Properties in fee simple, free and clear of all claims regardless of whether the forfeiture and conveyance is void or voidable due to a defect or irregularity in the proceedings to forfeit and convey the real property.[5] Both the City and the County filed responses to the motion for summary judgment.

Following a September 30, 2024 hearing, the circuit court entered an order on October 8 granting in part and denying in part Lang Properties' motion for summary judgment. Specifically, the court found in Lang Properties' favor that it took title in fee simple but also found that it took the land subject to the City's Disputed Clean-Up Liens and the County's 2022 real property tax lien.[6] Lang Properties now appeals.

## II. *Standard of Review*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, responses to requests for admission, and affidavits show that there is no genuine issue of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Hanners v. Giant Oil Co. of Ark., Inc.*, 373 Ark. 418, 422, 284 S.W.3d 468, 472 (2008). When reviewing whether a motion for summary judgment should have been granted, the appellate court determines whether the evidentiary items presented by the

---

[5]Lang also asked for other findings that related to Grober. To the extent those were even ruled on, any pending and unresolved claims were abandoned in Lang Properties' notice of appeal.

[6]Lang Properties does not challenge the validity of the tax sale on appeal. At the hearing, Lang Properties stated that it was not seeking to set aside the tax sale.

moving party in support of the motion left a material question of fact unanswered. *Bomar v. Moser*, 369 Ark. 123, 127, 251 S.W.3d 234, 239 (2007). In cases such as this, where the parties do not dispute the essential facts, this court simply determines whether the moving party was entitled to judgment as a matter of law. *Massey v. Fulks*, 2011 Ark. 4, 376 S.W.3d 389.

### III. *Analysis*

Lang Properties contends that the 2022 real property tax lien and the Disputed Clean-Up Liens on the Property sold by the Commissioner do not transfer to the new purchaser. Lang Properties reasons that Arkansas Code Annotated section 26–37–101(c) provides that "[u]pon receipt of the certification, title to the tax-delinquent lands shall vest in the State of Arkansas in care of the Commissioner of State Lands" and that this limited warranty deed provides that the Commissioner conveyed "all right, title and interest" to the Property, which extinguished all encumbrances. However, this authority does not support Lang Properties' claim that a tax sale extinguishes the City and County liens.

Arkansas Code Annotated sections 14-54-901 to -904 (Repl. 1998 & Supp. 2025) authorize "the imposition of a lien in order for a municipality to recover a fee for the cost of providing services that the property owner refuses to perform." *Tucker v. Holt*, 343 Ark. 216, 223, 33 S.W.3d 110, 114 (2000). A "Clean-up lien" is defined as "a lien securing the cost of work undertaken by a town or city to remove, abate, or eliminate a condition in violation of local codes or ordinances." Ark. Code Ann. § 14–54–903(a)(1)(A) (Supp. 2025). As such, "The town or city is given a lien against the property for the costs, including all administrative and collection costs." *Id.* § 14–54–903(c)(1). The legislature provided

5

municipalities with a mechanism for the enforcement and collection of these liens and expressly affords a ten-year period within which to enforce and collect those liens under Ark. Code Ann. § 14-54-904(a) (Supp. 2025), which provides as follows:

> The liens provided for in § 14-54-903 may be enforced and collected *at any time* within ten (10) years after a lien has been filed in either one (1) of the following manners:
>
> (1) By an action for foreclosure in the circuit court by the city or town, or if the city or town has established a land bank, by a land bank that has been assigned the lien; or
>
> (2)(A) The amount so determined at the hearing, plus ten percent (10%) penalty for collection, shall be certified by the governing body of the municipality to the tax collector of the county where the municipality is located and placed by him or her on the tax books as delinquent taxes and collected accordingly.
>
> (B) The amount, less three percent (3%) thereof, when so collected shall be paid to the municipality by the county tax collector.

(Emphasis added.) Lang Properties does not argue that the City failed to comply with Arkansas Code Annotated section 14-54-904(a). Moreover, nothing in the statute indicates that the right to enforce and collect on the Clean-Up Liens pursuant to section 14-54-904 is terminated or shortened by the occurrence of a tax sale.

Regarding the tax-sale, the tax-sale statutes govern the sale of tax-delinquent property and the nature of the title conveyed and likewise do not provide that municipal liens are extinguished upon such a sale. *See* Ark. Code Ann. §§ 26-37-101 to –316 (Repl. 2020 & Supp. 2025). The tax-sale statutes address the state's authority and its procedures to convey tax-delinquent land, but they do not purport to define or eliminate all preexisting encumbrances, particularly those the legislature has chosen to regulate separately and allow to be enforced over a defined period.

6

Lang Properties could not provide this court with persuasive authority sufficient to warrant a reversal. It argues that Attorney General Opinion No. 87-460 is controlling; however, we are not bound by an Attorney General Opinion. *Ark. Pro. Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 59, 69 S.W.3d 855, 862 (2002). The Attorney General opinion relied on by Lang Properties cites *Champion v. Williams*, 165 Ark. 328, 264 S.W. 972 (1924). However, *Champion* did not address whether liens are extinguished in a tax sale.

Though *Turley v. St. Francis County Road Improvement District No. 4* is not directly on point, we find it persuasive. 171 Ark. 939, 287 S.W. 196 (1926). *Turley* dealt with enforcement of a special improvement district ("SID") tax lien and held that "the forfeiture to the state of lands for general taxes necessarily suspends the enforcement of the special tax lien as long as the title remains in the state, but as the lien, under the terms of the statute, is not extinguished, and continues until the special taxes are paid, the same can be enforced when the land goes back into private ownership." *Id*. at 942, 287 S.W. at 197. In *Turley*, the statute expressly provided that the lien was not extinguished until it was paid in full. While there was no time limit to enforcement of the SID taxes in *Turley*, we find it analogous to the case before us. Arkansas Code Annotated section 14-54-904 specifically states that Clean–Up Liens may be enforced and collected within ten years of the lien being filed.

What is important is *what is not written in section 14-54-904*. The statute does not state the liens are enforceable and collectable unless the liens are extinguished by a tax sale. To conclude, as Lang Properties argues, that municipal liens are not collectable after a tax sale would effectively rewrite sections 14-54-903 and -904 by inserting a limitation—unless a

tax sale intervenes—that the legislature did not include. "Lien statutes are to be strictly construed." *See Taylor v. City of Fort Smith*, 2014 Ark. App. 450, at 4, 441 S.W.3d 36, 39. Strict construction means that nothing is taken as intended that is not clearly expressed. *Id.* Under settled principles of statutory construction, this omission is dispositive. If the General Assembly had intended that municipal liens would be extinguished by a tax sale, it would have expressly provided that result. *See Holbrook v. Healthport, Inc.*, 2014 Ark. 146, 432 S.W.3d 593 (recognizing that if the legislature had intended a different result, it could have stated so); *Macsteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 210 S.W.3d 878 (2005) (declining to read into a statute language not included by the General Assembly). We will not place such a limitation into sections 14-54-903 and -904 where none exists. *Taylor, supra.*

Strictly construing Arkansas Code Annotated section 14-54-903(a), we find the Disputed Clean-Up Liens were collectible and enforceable and, thus, not extinguished and owing for a period of up to ten years.

This conclusion is further reinforced by the nature of the interest conveyed at a tax sale and the knowledge to be imputed to the purchaser. A buyer at a tax sale is on notice that he is purchasing less than full and marketable title at a tax sale. The rules promulgated by the Commissioner of State Lands,[7] which have the same effect as law, reinforce that the

---

[7]The Rules of the Commissioner of State Lands, promulgated pursuant to legislative authority under Act 626 of 1983 and codified at Arkansas Administrative Code Agency 135, expressly provide that they "shall have the full force and effect of law." *See* 135.00.3-1-A Ark. Admin. Code (WL current through July 15, 2025). Arkansas courts have long recognized that properly promulgated administrative regulations carry the force and effect of law and are binding unless they conflict with a statute or exceed the scope of the agency's authority. *See, e.g.*, *McLane Co. v. Davis*, 353 Ark. 539, 110 S.W.3d 251 (2003).

purchaser at a land sale is purchasing land through a limited warranty deed and further

provide:

> The Commissioner will issue a Limited Warranty Deed conveying to the purchaser all rights, title, and interest received by the State in the tax-delinquent parcel through tax forfeiture. This deed is limited in nature and often requires subsequent legal action by the buyer to obtain full marketable title. The Commissioner does not warrant that the title it conveys is free of defect or other fault. The buyer is responsible for conducting all research regarding the parcel, including, but not limited to, consulting with private legal counsel and/or a licensed abstractor and performing a title search before bidding.

135.00.3-1-H Ark. Admin. Code (WL current through July 15, 2025).

As reflected in the statutes and regulations, property sold for delinquent taxes is conveyed by limited warranty deed, which does not guarantee title free and clear of all encumbrances; rather, the deed reflects transfer of the state's limited interest. *See id*.; *see also* Ark. Code Ann. § 26-37-203. The regulatory framework governing such sales likewise advises purchasers that it is their responsibility to conduct their own investigation of title and existing claims before purchase. 135.00.3-1-H Ark. Admin. Code. Further, the Commissioner's public-auction notice published before the tax sale and issuance of the limited warranty deed to Lang Properties expressly stated:

> The Commissioner of State Lands strongly suggests that potential bidders perform their own research on the property listed below to determine . . . the status of title, the existence of liens, and other tax assessments that may be due, but not collected by the Commissioner of State Lands.

In this case, a title search of the Property would have reflected these Disputed Clean-Up Liens at the time of the conveyance to Lang.

---

Accordingly, the Commissioner's rules govern the administration and legal effect of tax-delinquent land sales unless a contrary statutory provision expressly provides otherwise.

Because the legislature has not provided that municipal liens are extinguished by a tax sale but rather can be enforced and collected for a period of ten years, and because Lang was charged with the knowledge that these Disputed Clean-Up Liens exist, we hold that the Disputed Clean-Up Liens survive the tax sale and remain enforceable. The circuit court did not err.

Addressing the 2022 real property tax lien, these taxes would have become delinquent on October 16, 2023. Lang purchased the property on July 11, 2023, so the 2022 real property tax was not delinquent—or capable of being certified as tax delinquent—when Lang purchased the Property. The circuit court did not err in finding that the 2022 real property tax lien remains an enforceable lien after the sale.

Affirmed.

VIRDEN, GLADWIN, THYER, and WOOD, JJ., agree.

HARRISON, J., concurring and dissenting.

**BRANDON J. HARRISON, Judge, concurring and dissenting**. What title does a tax sale convey? In what way is the State Land Commissioner's limited warranty deed limited? The parties presented these lien-survival issues as questions of first impression—to be decided from first principles about the nature of a tax sale. The answers determine the effect of the related foreclosure and passing of title to the tax-sale buyer on two types of statutory liens. Despite a hefty bag of opinions from the nineteenth and early twentieth centuries that mention tax deeds, direct Arkansas precedent about a tax sale's effect on

10

interests in the forfeited land is rare.[1]  But *Turley v. St. Francis County Road Improvement District No. 4*, 171 Ark. 939, 287 S.W. 196 (1926), a centennial opinion that eluded the parties, decided an almost identical issue.  It directly informs both points in this appeal, albeit not for the reason the majority thinks on either point.

★ ★ ★

Lang Properties, LLC, grantee from Caleb Lang (collectively Lang), who bought this property at tax sale, essentially argues that (1) by statute, the lien for delinquent real property taxes is superior to all other liens, whenever created, Ark. Code Ann. § 26–34–101(b) (Repl. 2020); (2) the tax sale that foreclosed the property-tax lien operated in rem, meaning the lien attached to the property, not the prior property owner; and (3) an in rem sale foreclosing a superior lien ordinarily extinguishes inferior liens in the same property.  Upon forfeiture to the Commissioner, title to property "shall vest in the State of Arkansas in care of the Commissioner."  Ark. Code Ann. § 26–37–101(c) (Repl. 2020).  And the deed from the Commissioner to Lang by its terms transferred "all the right, title and interest of the State of Arkansas in and to the said property" with no reservation or exception.

From those core assumptions, Lang more specifically and understandably argues that upon confirmation of the July 2023 tax sale, the Commissioner's deed should "vest the complete and indefeasible title to the real property" in Lang and his grantees "in fee simple, free and clear of all claims" under Ark. Code Ann. § 26–38–206(a)(2) (Repl. 2020),

---

[1]Why?  Historically, tax sales were almost always determined to be void.  A void tax sale passes no title.  *E.g.*, *Champion v. Williams*, 165 Ark. 328, 264 S.W. 972 (1924).  When I use the term "tax sale," I mean a sale by the Commissioner of State Lands of real property forfeited to the state for delinquent real property taxes.

including Sebastian County's asserted lien for 2022 property taxes *and* the cleanup liens filed by the City of Fort Smith. Lang is half right. The majority today holds both statutory liens survive in the property, which makes it half wrong.

Though Lang's arguments are generally correct, under *Turley* they are somewhat beside the point. Why? Because whatever effect a tax sale has on other interests in the property sold, if a lien-creating statute expressly provides that the lien will "continue until [the obligations the lien secures] have been paid," then it is not extinguished by the sale. Such statutes exist aplenty it turns out. Our supreme court recognized this fact one hundred years ago in *Turley*; and later cases follow *Turley* because the creating statute included specific language about the lifespan of the lien. *Spikes v. Beloate*, 206 Ark. 344, 175 S.W.2d 579 (1943); *Miller v. Cache River Drainage Dist. No. 2*, 205 Ark. 618, 170 S.W.2d 371 (1943); *Harris v. Little Red River Levee Dist. No. 2*, 188 Ark. 975, 69 S.W.2d 877 (1934); *Stringer v. Conway Cnty. Bridge Dist.*, 188 Ark. 481, 65 S.W.2d 1071 (1933).

The main takeaway from this case is nothing at all unusual, though it has been overlooked here: The General Assembly knows how to communicate that it wants a subordinate lien to survive foreclosure of a superior lien. How do we know this? Because the continue-until-paid construction still appears in at least two dozen lien statutes, enacted as recently as 1995.[2] The failure to appreciate and apply this narrow and text-specific

---

[2]It appears in the liens for improvement districts for colleges and universities, Ark. Code Ann. §§ 6-71-109 & -113(c) (Repl. 2021); boiler-inspection fees, Ark. Code Ann. § 20-23-312(b)(2) (Supp. 2025); municipal improvement districts, Ark. Code Ann. § 14-90-805(b) (Repl. 1998); benefits accruing from the repair, replacement, or extension of a municipal improvement, Ark. Code Ann. § 14-91-503 (Repl. 1998); districts for maintenance and repair, Ark. Code Ann. § 14-91-602(b) (Repl. 1998); suburban improvement districts, Ark. Code Ann. § 14-92-228(b) (Repl. 1998); property owners'

12

grounding for cases that held a particular lien was not extinguished by tax sale led the circuit court to err the first round,[3] and this court to stumble the second go-around. That is to Lang's detriment here. But it also puts dozens of other statutes into a gray zone.

Instead of respecting the General Assembly's directive and *Turley*'s loooonnnngggg example, the majority offends both. Here we have the continue-until-paid directive in the "creating statute" for one of the two liens in this appeal—the lien for property taxes. *See* Ark. Code Ann. § 26-34-101(b). But the continue-until-paid directive *does not* appear in the cleanup lien statutes. *See* Ark. Code Ann. § 14-54-903 (Supp. 2025). This distinction matters. I would hold that, under *Turley*, the county's lien for unpaid 2022 real property taxes survived the tax sale; but Fort Smith's cleanup liens without that language were

---

improvement districts, Ark. Code Ann. § 14-93-119(b) (Repl. 1998); municipal property owners' improvement districts, Ark. Code Ann. § 14-94-118(b) (Repl. 1998); regional water distribution districts, Ark. Code Ann. §§ 14-116-601(c) & 608(b)(2) (Repl. 1998) (enacted by Act 838 of 1995); irrigation, drainage, and watershed improvement districts, Ark. Code Ann. § 14-117-413(c) (Supp. 2025); improvement districts for rivers, Ark. Code Ann. § 14-118-110(c) (Repl. 1998); water and soil improvement districts, Ark. Code Ann. § 14-118-310(a)(2) (Repl. 1998); drainage and levee improvement districts, Ark. Code Ann. § 14-120-404(b)(3) (Supp. 2025); drainage improvement districts, Ark. Code Ann. § 14-121-422(c) (Repl. 1998); conservation districts, Ark. Code Ann. § 14-125-708(b) (Repl. 1998); consolidated water and light improvement districts, Ark. Code Ann. § 14-218-114(b)(2) (Repl. 1998); ambulance service improvement districts, Ark. Code Ann. § 14-282-110(b) (Repl. 1998); fire protection districts, Ark. Code Ann. § 14-284-111(b)(1) (Repl. 1998); rural road improvement districts, Ark. Code Ann. § 14-317-119(b) (1987); improvement districts for acquiring rights-of-way, Ark. Code Ann. § 14-318-115(b) (1987); interstate bridge districts, Ark. Code Ann. § 14-320-111(a)(3) (1987); cemetery improvement districts, Ark. Code Ann. § 20-17-1111(b)(1) (Repl. 2018); and—finally— the lien for taxes assessed on real and personal property, Ark. Code Ann. § 26-34-101(b) (Repl. 2020).

[3]To the circuit court's credit, it was thoroughly engaged during a hearing on these issues and asked the parties probing questions. *Turley*, the decision we agree is controlling, was unearthed as we tried to decide these difficult issues as the parties presented them.

extinguished under the ordinary principles Lang has ably described. Also, the tax sale's effect on both liens must be determined from a de novo review of the statutes, not the Commissioner's working assumptions about them. *See Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 136, 597 S.W.3d 613 (agency interpretations of statutes are reviewed de novo, because it is the province and duty of the appellate court to determine what a statute means).

I respectfully concur in part and dissent in part.

## I.

The starting point for this case's legally intriguing analysis is one thing everyone agreed on below, but no one explained with a pointedness that the law permits: special-improvement district tax liens survive a tax sale. The Arkansas Supreme Court decision in *Turley* is why they do. In *Turley*, the appellants bought property in a road-improvement district after it was forfeited to the state for delinquent property taxes. After the tax sale, the improvement district tried to foreclose its lien for improvement taxes that accrued during the forfeiture. The issue was whether that lien survived. The supreme court discussed two statutes and held that it did.

One statute said unambiguously that improvement tax liens survive a sale for general taxes.[4] Open and shut? No; that statute was enacted too late to apply. It arrived in plenty of time, however, to inform this case. In *Turley*, the court held the same legislative intent

---

[4]Before Amendment 47 to the Arkansas Constitution provided that "[n]o ad-valorem tax shall be levied upon property by the State[,]" some property taxes were levied at the state level to raise general revenue. *E.g.*, Act 492 of 1921 § 1 ("for the year of 1921 and annually thereafter, there shall be levied and collected on each dollar of the assessed valuation of real and personal property in this State a total State tax of eight and seven-tenths (8 7/10) mills.").

14

the new statute made explicit—that improvement tax liens should survive a tax sale—was already implied in the statute that created the road improvement tax lien at issue. Specifically, the statute directed that the road improvement district's taxes "shall be a lien upon all of the real property in the district . . . and shall be entitled to preference over all demands, executions, incumbrances or liens whatsoever created, *and shall continue until such assessments with penalty and costs that may accrue thereon have been paid.*" *Turley*, 171 Ark. at 939, 287 S.W. at 196 (quoting Crawford & Moses' Digest § 5433) (emphasis added).

The supreme court continued:

[W]e think [that statute] is equally potential in continuing the lien of the improvement district, and in preventing its extinguishment by a sale for general taxes. The words, "all demands, executions, incumbrances or liens whatsoever created," have no reference to the state's paramount lien for taxes. *But the words which follow unmistakably carry the meaning that the special taxes of the improvement district shall continue until fully paid, and are not extinguished.*

Of course, the forfeiture to the state of lands for general taxes necessarily suspends the enforcement of the special tax lien as long as the title remains in the state, *but as the lien, under the terms of the statute, is not extinguished, and continues until the special taxes are paid, the same can be enforced when the land goes back into private ownership.* This construction of the statute gives full recognition to the state's paramount right of taxation, and in no wise detracts from the dignity and power of the state as against subordinate governmental agencies.

*Id*. at 942, 287 S.W. at 197 (emphasis added). Here again is the main point: the fireproof language was that the lien "shall continue until such . . . have been paid."

*Turley* is important for a few reasons. First, it establishes that the basic premise for Lang's arguments is correct. The supreme court assumed that a sale foreclosing the State's "paramount lien" for property taxes would extinguish inferior liens in the property. Otherwise, the court would not have needed to discuss either one of the statutes it did.

15

For Lang, *Turley* includes some bitter with the sweet.  Because the property-tax-lien statute includes the same continue-until-paid language, *Turley* alone defeats Lang's argument that the tax sale extinguished the 2022 property tax lien:

> (a) Taxes assessed upon real and personal property shall bind them and be entitled to preference over all judgments, executions, encumbrances, or liens whensoever created.

> (b) *All taxes assessed shall be a lien* upon and bind the property assessed from the first Monday of January of the year in which the assessment shall be made *and shall continue until the taxes, with any penalty which may accrue thereon, shall be paid*.  However, as between grantor and grantee, the lien shall not attach until the last date fixed by law for the county clerk to deliver the tax books to the county collector in each year after the tax lien attaches.

Ark. Code Ann. § 26-34-101 (emphasis added).  If that language preserved the lien in *Turley* from foreclosure of a "paramount lien," it must be enough here to preserve a lien of the exact same kind.[5]  That is why I agree with the majority's *disposition* of the property-tax point and would also affirm the circuit court by half (albeit with a different analysis than the majority's).

But contrary to the majority's inside-out reliance on it, *Turley* counsels us to reverse and scrub the record of error on the cleanup liens.  We don't have the continue-until-paid

---

[5]Further, *Turley* held that the lien for the improvement tax assessments continued to accrue while the property was forfeited to the State (though the State was immune from taxation) and could be enforced when it returned to private ownership.  This settles Lang's similar argument that property taxes for 2022 did not accrue because title to the property was in the Commissioner (and thus the State), or because they were not overdue in July 2023 when the tax sale took place.  Setting aside when property taxes are due, the assessments for them "shall be a lien upon and bind the property assessed from the first Monday of January of the year in which the assessment shall be made."  Ark. Code Ann. § 26-34-101(b).

16

directive in the cleanup lien statute. Neither the parties, the circuit court nor the majority have appreciated this statutory fact of dispositive importance.

Please don't write me off as an annoying nitpicker. Our supreme court has underlined this link again and again over one hundred years. We could give that fact no work to do today; but I choose otherwise. In *Stringer*, for example, the court quoted *Turley* and held that a bridge district tax lien survived because the creating statute also provided that

> the assessments shall be a lien against all real estate in said district, from the date of said resolution, and entitled to preference over all judgments, executions, incumbrances, or other liens whatever, and *shall continue until such assessment with any penalty and cost which may accrue thereon, shall be paid*.
>
> There is nothing in [a later Act] that changes this rule, announced by this court [in *Turley*], or repeals or modifies the law creating the lien.

188 Ark. at 484, 65 S.W.2d at 1073. Consider *Miller*, too, which involved a drainage district lien. *Miller* observed that the lien in *Turley* "was held to be preserved by" the lien statute quoted above and "[s]imilar language similarly construed was used" in the act that created the bridge district in *Stringer*. 205 Ark. at 623, 170 S.W.2d at 374. The drainage district lien in *Miller* survived because "[c]orresponding wording is found in § 4465 of Pope's Digest pertaining to drainage districts." *Id*. So the liens in *Miller* and *Stringer* survived because of the continue-until-paid directive. None of the cleanup lien statutes includes that language. I have found no decision holding that a lien that did *not* include it survived a tax sale. We do not need to go further than that in the analysis. But we can, and if we do, *Turley* keeps on giving.

The *Turley* line of cases, and the proliferation of lien statutes with the continue-until-paid language, has an additional significance.  My colleagues say that the Commissioner of State Lands advises purchasers to check for liens and encumbrances before bidding.  Okay.  But I give that little weight.  For one thing, telling would-be buyers to search for liens would be good advice even if the Commissioner knew they would not survive the tax sale.  Liens are extinguished by law, not magic.  (We all know a lawyer's boilerplate advice when we read it.)  Further, a void lien can still be an expensive headache if the lienholder tries to enforce it anyway.  More to the point, *Turley* alone would justify that advice:  even if a valid tax sale extinguishes liens under every statute that *does not* contain the continue-until-paid language, dozens of lien statutes *do* include it.  *See supra* note 2.  Any of those liens would survive the tax sale.[6]

Third, the improvement lien statute in *Turley* actually included *two* indications the lien should survive foreclosure, and the statute that created Fort Smith's cleanup liens lacks both.  The statute in *Turley* gave that improvement lien priority over "all demands, executions, incumbrances or liens whatsoever created." 171 Ark. at 939, 287 S.W. at 196.  Hard to end-run the phrase "whatsoever created."  But the tax sale had foreclosed a property tax lien with the same super-priority language.  Crawford & Moses' Digest § 10023 (now Ark. Code Ann. § 26-34-101(b)).  And those property taxes were levied by the State itself, a higher taxing body.  So despite the shared priority language, the improvement district lost the priority draw.

---

[6]The attorney general opinion the majority finds unpersuasive, Op. Ark. Att'y Gen. No. 87-460 (1988), answered a question from a previous Commissioner of State Lands.

18

Though the super-priority language was not dispositive in *Turley*, where the foreclosed lien was for property taxes, against a different lien it would have preserved the improvement lien from foreclosure as simply a superior lien. Ark. Code Ann. § 16-66-411(a) (Repl. 2005) ("A sale of lands under a junior judgment shall pass the title of the defendant, subject to the lien of all prior judgments and decrees then in force."). That says much about the General Assembly's intent.

The General Assembly did not try to give cleanup liens the City filed priority over "all demands, executions, incumbrances or liens." They don't even have the highest priority among the cleanup liens. Ark. Code Ann. § 14-54-903(a)(1), (c)(1) & (3). In fact, they have the *lowest* priority of three kinds. The City's cleanup liens "may have priority against other lienholders as provided in [Ark. Code Ann. § 14-54-903]." *Id.* § 14-54-903(a)(1)(B). But only if the City perfects a "priority clean-up lien" after notice and hearing by filing an action in circuit court and naming the prior lienholders. *Id.* § 14-54-903(a)(3), (j)(1). The City has not done that. The statute discusses the cleanup liens' relative priority in detail. Would it do so if the General Assembly intended that all of them would survive any foreclosure?

One final point in response to the majority's analysis relates to some statutory language about a cleanup lien's ten-year duration. The majority relies on language that a cleanup lien "may be enforced and collected at any time within ten (10) years after a lien has been filed[,]" Ark. Code Ann. § 14-54-904(a) (Supp. 2025). That timebound statement, however, has nothing to do with preserving those liens from *extinguishment*. It is akin to a

19

statute of limitations to act on a right, not a law of extinguishment. The two are manifestly not the same legal notion.

I agree that statutory liens are strictly construed. But they are strictly construed against, *not for*, the lienholder. *Herringer v. Mercantile Bank of Jonesboro, Ark.*, 315 Ark. 218, 866 S.W.2d 390 (1993). Here, that's the City. Further, we have construed this same provision as a statute of limitations on enforcing the cleanup lien. *Taylor v. City of Fort Smith*, 2014 Ark. App. 450, 441 S.W.3d 36. That's what it is. And that's all it is. There is no real difference between saying a cleanup lien "may be enforced and collected at any time within ten (10) years after a lien has been filed[,]" Ark. Code Ann. § 14-54-904(a), and saying a judgment lien "shall [c]ontinue in force for ten (10) years from the date of the judgment." Ark. Code Ann. § 16-65-117(d)(1)(A) & (A)(i) (Supp. 2025). Neither statute says anything about whether the lien can be extinguished sooner by other events—by payment, for example. Obviously, they can.

Finally, I note that the nuanced analysis the majority and I have traded is essentially academic because this dispute was in some sense unnecessary. The county tax collector could have indisputably certified Fort Smith's cleanup fees to the Commissioner as delinquent taxes under Ark. Code Ann. § 14-54-904(a)(2)(A). Had that had been done, the Commissioner would already have paid them from the $71,000 in excess proceeds held in escrow for the heirs of the former owner who let the property fall into disrepair. Ark. Code Ann. § 26-37-205 (Supp. 2025). I assume the Commissioner would have added the cleanup fee "taxes" to the sum owed on the property before the auction—the point of the

20

sale was to collect a debt owed, after all.  Lang could have used that information in the bidding process.

Instead, because the county collector stumbled, the former owner is off the hook for the cleanup fees, and they have been shifted to Lang, who might justifiably feel he has paid them twice.  Three stumbles by three governmental actors at three different levels yields no charm for Lang today.  If Lang can reach Level 4, however, then he may be vindicated.

I respectfully concur in part and dissent in part.

*Jones, Jackson, Moll, McGinnis & Stocks, PLC*, by: *J. Dalton Person*, for appellant.

*Daniel Shue*, prosecuting attorney, for separate appellee Sebastian County, Arkansas.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield*, *Colby T. Roe*, and *Ethan M. Bridgforth*, for separate appellee City of Fort Smith, Arkansas.